15635

YOUNG v. LIFE & CASUALTY INSURANCE CO. OF TENN.

(29 S. E. (2d), 482)

September, 1943.

*Mr. N. A. Turner,* of Columbia, S. C., Counsel for Appellant,

*Mr. T. P. Taylor,* of Columbia, S. C., Counsel for Respondent,

March 15, 1944.

Mr. Associate Justice Fishburne delivered the unanimous Opinion of the Court:

The policy in this suit was issued on January 26, 1931, upon the life of Ernest Colvin, and designated the plaintiff, Barney J. Young, as beneficiary. The insured was enrolled in the Army of the United States in 1942, when this country was actively engaged in war. He died on December 24, 1942, shortly after his induction into the military forces. His death resulted from an automobile accident while he was visiting relatives at Hartsville, South Carolina.. It is admitted that his accidental death had no causal connection with his military service, and that it occurred at a time when he was on furlough from the Army.

The policy provides that upon receipt of due proof that the death of the insured resulted directly from bodily injury, independently of all other causes, and that such bodily injury was effected solely through external, violent, and accidental means, and that death occurred within ninety days thereafter, the company would pay to the beneficiary double indemnity.

By stipulation, the case was tried before the Judge of the County Court of Richland County without a jury, and a judgment was rendered in favor of the plaintiff for the accidental death benefit.

The defense relied upon by the appellant arises under the following provisions of the policy:

"No Accidental Death Benefit will be paid if the death of the Insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity, nor if death results from bodily injuries sustained while participating in aviation or aeronautics as a passenger or otherwise, or while the insured is in military or naval service in time of war."

"Military and Naval Service—The insured may serve in the Navy or Army of the United States or in the National Guard in time of peace or for the purpose of maintaining order in case of riot; in time of actual war, however, a written permit must be obtained from the Company for such service and an extra premium paid. Should the insured die while enrolled in such service in war time without such permit, the Company's liability will be restricted to the net reserve on this policy."

It is admitted that prior to entering the military service, the insured did not obtain a written permit from the company for such service, nor did he pay an extra premium. The appellant contends that by virtue of the second clause above quoted, in order to keep the insurance in full force, the insured was required, in case he entered the military service in time of war, to obtain written consent from the company and pay an extra premium. The further position is taken that the insured's mere status by enrolment as a member of the military organization would be sufficient to make operative the first clause of the policy hereinabove quoted, and would bar recovery; and that causation between the participation of the insured in military service and his subsequent death need not be established.

The respondent takes the contrary view, and maintains that the parties did not intend that the reduction in liability

should be operative merely because of the status of the insured as a soldier, but was conditioned upon the insured's death resulting from his participation in military service; that consequently the double indemnity could be recovered when it appeared that the insured was killed in an automobile accident while on furlough from his military unit. It is argued that it was not incumbent upon the insured to apply for a written permit or to pay an extra premium since his death was in no way related to or caused by military activities connected with his service in the Army.

The decisions in the various state courts are not in accord as to whether a provision excepting or limiting the liability of the insurer while the insured is engaged in military or naval service applies to death from any cause while in such service in point of time, or applies merely to death caused by such military or naval service. An examination of the cases shows that this apparent conflict is due in some measure to the difference in the phraseology in the policies. In some cases, the view has been taken that a provision excepting or limiting the liability of the insurer while the insured is "engaged" in military or naval service, means death while doing or taking part in some military activity, and that the parties intended that the liability should relate to a death resulting from some act connected with the service in contradistinction to a period of time when the insured was in such service.

Other cases, however, have held that an exception or limitation of liability in the event of death while engaged in military or naval service means the status of the insured, and not the causation of his death, where there is no provision indicating a contrary intention. See Note, 137 A. L. R., p. 1263 *et seq.*

In the case at bar, the word "engage" is not found in either of the clauses of the policy issued to the insured. By the second clause it is provided that "should the insured die

while enrolled in such military service in war time without such permit, the Company's liability will be restricted to the net reserve on this policy." The first clause quoted, after exempting the company if the death of the insured results from or is caused by various contingencies, provides, "or while the insured is in military or naval service in time of war."

There is no question but that when the insured became enrolled and took the prescribed oath, he entered the military service of the United States Government, and thereafter became subject to the orders and discipline provided for that branch of the service. The sole issue here is whether the parties intended status or causation to govern liability.

The Supreme Court of Oklahoma, in a soundly reasoned case (*Barnett v. Merchants' Life Ins. Co.*, 87 Okl., 42, 208 P., 271, 273), had this to say with reference to a military clause in which the word "engage" was used:

"But, under the admitted facts in this case, we prefer to follow the other rule (causation and not status) supported by well-reasoned cases hereafter mentioned. There can be no serious contention but that the intention of the parties to the contract of insurance by inserting a military clause was to restrict and limit the liability of the company in the event of increased hazard to the insured by engaging in military service. Now, if such service did not increase the hazard, the clause has served its purpose. * * *

"The phrase 'engaged in military service in time of war', in order to have a consistent and harmonious construction in connection with the general terms and scope of the insurance contract, must denote such service as would increase the hazard or risk of the insurer. Where the insured died many miles away from actual military engagements, with an ordinary disease, common alike to civil and military life, there is no just reason to permit the insurer from escaping liability such as was assumed by it under its primary obligation as shown by the stipulation herein."

In *Illinois Bankers' Life Ass'n v. Davaney*, 1924, 102 Okl., 302, 226 P., 101, 103, the policy involved contained the following clause: "It is expressly provided that death while in the service in the army or navy of any government in time of war is not a risk covered at any time during the continuance or reinstatement of this policy of any greater sum than the amounts actually paid to the company herein." It was contended that since .the clause in question did not include the term "engage", the case was distinguishable from *Barnett v. Merchants' Life Ins. Co.*, 1922, *supra*. But the Court overruled this contention, expressing the opinion that under the type of war clause here involved, it was just as necessary to show that the insured's death resulted from his participation in military service as it was under the type of clause construed in the *Barnett case*. It was accordingly held that since it appeared that the insured had died of pneumonia while in the service, a disease which was common to people in both civil and military life, the insurer was liable for the full face amount of the policy.

In the case before us, we think it clear that although the policy contains the word "enroll" and not "engage", it was intended by the parties, insured and insurer, that the failure of the insured to obtain the permit and pay the extra premium would reduce the company's liability only in case his death should result from a risk peculiar to the military service. This view is strengthened by the requirement that an extra premium be paid in the event of military service in time of war. It is evident that an extra hazard was in contemplation of the parties as a possible cause of death, and that for this added risk the Company should be compensated. This added risk, in our view, cannot reasonably be referred to status; it relates to the death of the insured caused by or connected with his military duties as a member of the nation's armed forces. This seems to us to be the natural and · obvious reading of the clauses quoted.

A policy may be so worded that it is clear that the parties intended that the mere status of the insured as a member of the armed forces should be sufficient to make the provision relating to military service operative, and that the assured's death while such a member should be enough to relieve the insurer, irrespective of whether or not it was attributable to his military activities. But we do not consider that the policy before us is so worded. It would have been an easy matter for the company to have used words clearly exempting it from liability in the event the insured should die from any cause while enrolled in the armed forces in war time. However, this was not done.

In the recent case of *Smith v. Sovereign Camp of The Woodmen of the World,* 204 S. C., 193, 28 S. E. (2d), 808, 810, the military clause of the policy there under consideration provided: "The double indemnity benefits hereby provided shall not be payable—while the member is in the military or naval service in time of war." We have the same phraseology in the policy now before us; and in that case, as in this, the insured died as the result of an automobile accident while on furlough. The Court held that under the foregoing provision, there must be some causal connection between the accident and the military service; and that the death of the insured while on furlough was not a risk of military service within the meaning of the policy provision.

We have denied the status theory in previous cases involving insurance clauses. In *McGee v. Globe Indemnity Co.,* 173 S. C., 380, 175 S. E., 849, 850, it was held that a provision in a policy indemnifying the owner of an automobile against loss or damage to his car, which should not apply while the car was used by any person in violation of law as to age, or by any person under the age of 16 years, did not relieve the insurer of liability for an accident, although the operator of the car at the time was under 16 years of age. The Court held that in addition it must be shown that

a causal connection existed between the age of the driver and the accident.

In the *McGee case, supra,* the insurer specifically raised the question of status or condition. The Court stated with reference to this contention: "We are of the opinion that the distinction advanced between the excluded act and condition is without any logical basis. * * * The rule established by the *Reynolds case* [*Reynolds v. Life & Casualty Ins. Co.,* 166 S. C., 214, 164 S. E., 602], is obviously founded upon the reasonable view that, when the parties made the contract of insurance, they were not inserting a *mere arbitrary provision,* but that it was the purpose of the insurance company to relieve itself of liability from accidents *caused by the excluded condition."* (Emphasis added.)

The decision in the *McGee case* was deemed conclusive in the later case of *Bailey v. United States Fidelity & Guaranty Co.,* 1937, 185 S. C., 169, 193 S. E., 638, 639, in which an automobile liability policy issued by the defendant provided that it excluded any liability for injuries which occurred while the insured's automobile was being driven "by any person under the age fixed by law or under 14 years in any event." The Court held that this exclusion clause did not relieve the insured from liability for any injury which occurred while the automobile was being operated by the insured's son, who was under the age of fourteen years, where no causal connection was shown between the age of the driver and the accident. And it was said that the words "in any event", contained in the exclusion clause, which were not found in the policy involved in the *McGee case,* did not render that decision inapplicable. The Court referred again to the statement made in the *McGee case,* that it was not the intention of the parties to the insurance contract that the exclusion provision should be a mere arbitrary one, but that it was the purpose of the insurance company to re-

lieve itself of liability from accidents caused by the excluded conditions.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.