Bobby Earl **KERR** and Mildred Kellett **Kerr**, Plaintiffs,

v.

**STATE FARM FIRE AND CASUALTY CO., Defendant.**

**Civ. A. No. 81–2780–14.**

United States District Court, D. South Carolina, Greenville Division.

Dec. 29, 1982.

---

Wyatt Saunders, Laurens, S.C., for plaintiffs.

John E. Johnston, Leatherwood, Walker, Todd & Mann, Greenville, S.C., for defendant.

## ORDER

WILKINS, District Judge.

In the early morning hours of July 26, 1980, the home of Bobby Earl Kerr and Mildred Kellett Kerr located in Ware Shoals, South Carolina, was destroyed by arson.[1] At the time of the fire, the Kerrs' home and its contents were insured by a State Farm Fire and Casualty Co. (State Farm) insurance policy. The maximum coverage provided under the policy was Fifty-five Thousand One Hundred and no/100 ($55,100.00) Dollars for the dwelling house, Thirty-seven Thousand Five Hundred Fifty and no/100 ($37,550.00) Dollars for the contents of the dwelling house, and Sixteen Thousand Five Hundred Thirty and no/100 ($16,530.00) Dollars for living expenses of the Kerrs in the event the dwelling house was destroyed by fire. The policy contained an additional provision covering such items as trees and shrubs and debris removal.[2] The Kerrs presented a timely claim for the insurance proceeds, along with a duly sworn proof of loss to State Farm.[3] State Farm refused to pay the Kerrs the amount allegedly due under the terms of the policy.[4]

The Kerrs then brought suit in the Court of Common Pleas for Laurens County, South Carolina, seeking to recover under the terms of the policy. State Farm removed the action to this Court. It denied any liability under the terms of the policy and asserted two (2) affirmative defenses, (a) that the Kerrs intentionally caused the burning of the insured premises or conspired with others to procure the burning of the insured premises, and (b) that the Kerrs breached the terms of the insurance policy by intentionally submitting false claims concerning the loss.[5]

At the pretrial conference and during the trial, the parties agreed that the Court would submit special interrogatories to the jury. Fed.R.Civ.P. 49(a). The Court submitted to the jury a special verdict form

---

1. During the trial the parties stipulated that the cause of the fire was arson.

2. As provided in the policy the coverage for the dwelling house was different from the other coverages in that the value of the realty was predetermined to be $55,100.00 while the value of other property depended upon an after-the-fact determination. Both real and personal losses required that a claim be filed with the insurer, but this was a perfunctory task with respect to the realty.

3. A very detailed list was submitted consisting of a number of pages of personal items the Kerrs claimed were destroyed. The jury found this claim to have been false in some respect.

4. State Farm, pursuant to the terms of the policy and with the Kerrs' authorization, did pay to the mortgagee, Heritage Federal Savings and Loan Association, Forty Thousand Two Hundred Fifty-three and 30/100 ($40,253.30) Dollars, the amount of the mortgagee's unsatisfied lien secured by the real property covered by the insurance policy. This payment was asserted by State Farm as a setoff in its Answer; at the pretrial conference the parties stipulated that this amount would be deducted from any recovery to which the Kerrs were entitled.

5. State Farm, as assignee of the mortgage, also asserted a counterclaim against the Kerrs resulting from their alleged failure to make any payments on the mortgage and accompanying promissory note after January 29, 1981, the date of the assignment from Heritage Federal Savings and Loan Association to State Farm.

containing four (4) interrogatories,[6] the form and wording of each agreed to by the parties. The jury found that neither Bobby Earl Kerr nor Mildred Kellett Kerr had any involvement in the burning of their home but that both Kerrs intentionally submitted false claims (or misrepresented material facts) to State Farm concerning loss or expenses incurred other than the loss of the real property.[7]

The Kerrs move for judgment notwithstanding the verdict or, in the alternative, to alter or amend the verdict of the jury. Fed.R.Civ.P. 50(b) and 59(e). In support of their motions, the Kerrs assign error to the Court's instructions to the jury and assert that the evidence was insufficient as a matter of law to sustain the jury's finding of misrepresentation. Both contentions must fail. First, the jury was instructed fully and correctly on the applicable law. Moreover, there was sufficient evidence from which the jury could find that the Kerrs submitted a false claim regarding their loss, and the mere fact that the evidence was in conflict is not sufficient to either enter judgment notwithstanding a verdict or alter or amend a verdict. The motions are denied.

The primary issue before the Court is whether a finding that the Kerrs intentionally submitted false claims to State Farm concerning personal property losses operated to void the entire policy, including the coverage relating to the real property. State Farm relies on the following policy provision to preclude any recovery under the policy:

2. Concealment or Fraud. This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

## CONCLUSIONS OF LAW

The issue of whether a forfeiture of the entire policy results when an insured intentionally misrepresents the amount of his loss has never been directly addressed by the courts of this state. Thus, this Court must determine what the South Carolina Supreme Court would decide if presented with this issue.

State Farm urges the Court to read *Nabors v. South Carolina Farm Bur.*, 273 S.C. 126, 255 S.E.2d 337 (1979) as holding that an entire forfeiture will result where there is any fraud in a claim, regardless of whether the fraud was connected with the entire loss. The Court refuses to read *Nabors* so broadly. In that case, arising out of a mobile home fire, Defendant asserted the defense of fraud and false swearing. A general jury verdict was returned which approximated the value of the mobile home. Since the jury verdict was for no more than the value of the mobile home, Defendant argued on appeal that the verdict was an implicit finding of fraud by the jury concerning claims of loss of personal property. The South Carolina Supreme Court refused to look beyond the jury verdict in order to find fraud, and therefore did not address the issue now before this Court. However, a line of South Carolina cases involving various contracts of insurance is dispositive of this issue. The gist of these cases is that an insurer, to defeat recovery under a policy exclusion, must establish a causative con-

---

**6.** (1) Did Bobby Earl Kerr consent to and have prior knowledge of, or was he involved in, the setting of the fire which destroyed the house in question?
(Yes or No) [The jury answered "No."]
(2) Did Mildred Kellett Kerr consent to and have prior knowledge of, or was she involved in, the setting of the fire which destroyed the house in question?
(Yes or No) [The jury answered "No."]
(3) Did Bobby Earl Kerr, in filing or assisting in the filing of a claim for proceeds (money) under the insurance policy, intentionally submit a false claim or misrepresent any material fact regarding the claim?

(Yes or No) [The jury answered "Yes."]
(4) Did Mildred Kellett Kerr, in filing or assisting in the filing of a claim for proceeds (money) under the insurance policy, intentionally submit a false claim or misrepresent any material fact regarding the claim?
(Yes or No) [The jury answered "Yes."]

**7.** Under the Court's instructions, interrogatories (1) and (2) dealt with the defense of arson and interrogatories (3) and (4) dealt with the defense of the submission of false claims for loss of personal property or other expenses.

nection between the excluded act and the loss.

In *Reynolds v. Life & Casualty Ins. Co. of Tennessee,* 166 S.C. 214, 164 S.E. 602 (1932), a life insurance policy contained a provision that the insurer would not be liable "[i]f the insured shall die . . . as a result of acts committed by him while in the commission of . . . some act in violation of law." The insured at the time of the accident was riding on the running board of a vehicle which was a violation of law. The Court found the insurer's argument that the quoted provision relieved it of liability unpersuasive: "In order to defeat recovery under policies excluding or limiting liability where death or injury results from an unlawful act on the part of the insured, there must be shown, in addition to the violation of law, some causative connection between such act and the death or injury." *Id.* 164 S.E. at 603.

Approximately two years after the *Reynolds* decision, the question of an insurer's responsibility to show causal connection was again presented. In *McGee v. Globe Indemnity Co.,* 173 S.C. 380, 175 S.E. 849 (1934), an automobile insurer sought to escape liability under a policy provision that coverage would not apply "in respect of any automobile . . . (2) while used or maintained by any person under the age of sixteen (16) years." The automobile, at the time of the collision, was being driven by the insured's son who was fifteen (15) years of age. The insurer demurred to the insured's reply which alleged that there existed no causal connection between the driver's age and the accident. The trial court relied on *Reynolds* in overruling the demurrer. The South Carolina Supreme Court affirmed the judgment of the lower court:

> The rule established by the Reynolds Case is obviously founded upon the reasonable view that, when the parties made the contract of insurance, they were not inserting a mere arbitrary provision, but that it was the purpose of the insurance

company to relieve itself of liability from accidents caused by the excluded condition. And there is no more reason that the parties to the contract of insurance would arbitrarily exclude liability under a certain condition than they would arbitrarily exclude liability in the commission of a certain act.

*McGee v. Globe Indemnity Co.,* 175 S.E. at 850.

The most recent South Carolina case dealing with this causal connection issue is *South Carolina Ins. Co. v. Collins,* 269 S.C. 282, 237 S.E.2d 358 (1977). In *Collins,* a clear and unambiguous provision in an aircraft insurance policy provided that the insured pilot would be covered only if he held a valid medical certificate as required by law. The last medical certificate held by the insured expired several months before the crash. The parties stipulated that there was no causal connection between the loss and the failure of the insured to have a valid medical certificate. The insurer endeavored to avoid liability under the provision requiring a valid medical certificate. The Court rejected that argument and, following the *Reynolds-McGee* rationale, held that the insured's estate was entitled to recover.[8]

The Court is well aware that the majority rule in other jurisdictions is that any misrepresentation, fraud or false swearing as to any portion of the property covered under an insurance policy prevents any recovery under the policy. *See* 5A Appleman and Appleman, *Insurance Law and Practice,* § 3595 (1982). However, the *Collins* court found a similar argument "unpersuasive. Only their number, not their reasoning, lends support to" the insurer's position. *South Carolina Ins. Co. v. Collins,* 237 S.E.2d at 362. Similarly, this Court is not persuaded by the apparently prevailing view in jurisdictions other than South Carolina. The South Carolina position is clear. An insurer may not rely on a provision excluding coverage absent a causal connec-

---

**8.** The *Reynolds-McGee* approach has been followed in cases too numerous to discuss. *See Bailey v. United States Fidelity & Guaranty Co.,* 185 S.C. 169, 193 S.E. 638 (1937); *Smith v. Sovereign Camp, W. O. W.,* 204 S.C. 193, 28 S.E.2d 808 (1944); *Young v. Life & Casualty Ins. Co. of Tennessee,* 204 S.C. 386, 29 S.E.2d 482 (1944); *Outlaw v. Calhoun Life Ins. Co.,* 238 S.C. 199, 119 S.E.2d 685 (1961).

tion between the loss and the excluded or forbidden act.

This Court holds that the South Carolina Supreme Court would follow the *Reynolds-McGee-Collins* line of cases in the present action. The Kerrs' misrepresentations were entirely divorced from and bore no relation whatsoever to the loss of their residence. The Kerrs' right to recover under the policy for the loss of their real property vested at the time of the fire. Absent arson by the insured, the policy provided for a fixed amount to be paid in the event the real property was destroyed by fire. To be sure, had the Kerrs submitted no claim for personal property loss, they would be entitled to payment for the loss of realty. The submission of a false claim for personal property did not affect this vested right.

Consequently, since there was no causal connection between the Kerrs' misrepresentations and the claim for loss of their real property, it is ordered that the Kerrs are entitled to recover Fifty-five Thousand One Hundred and no/100 ($55,100.00) Dollars, the fixed amount of the insurance on the dwelling house, subject to State Farm's set-off.

AND IT IS SO ORDERED.