Zoe TEMPELIS, a/k/a Zoe Tempeli and his wife Sally Tempelis, Plaintiffs-Appellants,

v.

AETNA CASUALTY & SURETY COMPANY, Defendant-Respondent-Petitioner.

Supreme Court

*No. 90-2525. Oral argument April 28, 1992.—Decided June 17, 1992.*

(Also reported in 485 N.W.2d 217.)

2

For the defendant-respondent-petitioner there were briefs by *Robert J. Terhaar* and *Cosgrove, Flynn, Gaskins & Haskell,* Minneapolis and oral argument by *Mr. Terhaar.*

For the plaintiffs-appellants there was a brief by *James L. Cirilli* and *Peterson, Cirilli, Gondik & Moldenhauer,* Superior and oral argument by *James L. Cirilli.*

WILLIAM A. BABLITCH, J. Aetna Casualty and Surety Company (Aetna) seeks review of a court of appeals' decision which awarded the Tempelises their full claim for losses incurred by them from a fire that damaged their home, its contents and caused additional living expenses. At trial, the jury concluded that the fire was not set by or at the direction of the Tempelises. However, the jury concluded that the Tempelises, by creating fraudulent receipts for living expenses, intentionally misrepresented material facts and made false statements regarding their insurance. Aetna argues that their policy unambiguously voided coverage of the Tempelises' entire insurance claim, including the claim for the destruction of the Tempelises' home, upon the jury's finding that the Tempelises made a material misrepresentation on their proof of loss form concerning additional living expenses. We conclude that the policy is ambiguous because a reasonable insured could interpret the policy as vitiating or canceling coverage only as to the subsection or element of the claim to which the material misrepresentation relates, as opposed to canceling coverage of the entire insurance claim. It is a longstanding principle of law that any ambiguity in an insur-

ance contract must be construed in favor of the insured. We therefore hold that the portion of the Tempelises' insurance claim to which the fraud relates, i.e., the claim for additional living expenses, is void and coverage is denied. The remaining amounts of the insurance claim for the damage to the home and its contents are due the insured. Accordingly, we modify the judgment of the court of appeals and, as modified, affirm.

The relevant facts are undisputed. In approximately July, 1988, the Tempelises purchased a home for $20,000 and subsequently insured the home through Aetna for $100,000. On January 28, 1989, while the Tempelises were out of town, the house was destroyed by a fire. On March 28, 1989, the Tempelises submitted a proof of loss claim to Aetna. Included in their loss claim was a request for reimbursement for additional living expenses. Additional living expenses are any necessary increases in living expenses incurred by an insured in order for the insured's household to maintain its normal standard of living in the event the premises are uninhabitable. As to their living expenses, the Tempelises included in their proof of loss fifty-one fraudulent receipts which purported to represent their living expenses of $6,354.55. After investigating the claim, Aetna denied coverage of the entire claim on the grounds of arson, intentional concealment and misrepresentation of material facts concerning the claim.

The Tempelises brought an action to recover under the policy. A jury trial was held in July and August of 1990. As stated in Aetna's brief, the jury found that the fire was not set by or at the direction of the Tempelises. "However, the jury unanimously concluded that plaintiffs, by creating fraudulent receipts for living expenses, intentionally misrepresented material facts and made false statements regarding their insurance." Petitioner's

Brief, pp. 8–9. The jury assessed the amount of damages sustained by the Tempelises as a result of the fire as follows: (1) the building—$100,000; (2) the contents of the building—$26,364.90 and; (3) additional living expenses—$1,951.65.

Aetna moved the circuit court for judgment on the special verdict arguing that under the policy intentional misrepresentation voids coverage of the entire insurance claim and thus the Tempelises should not receive money for the building, its contents, nor additional living expenses. Aetna relied on the following policy language:

SECTION I and SECTION II—CONDITIONS

. . .

2. CONCEALMENT OR FRAUD. WE DO NOT PROVIDE COVERAGE FOR ANY INSURED WHO HAS:

a. INTENTIONALLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE;

b. MADE FALSE STATEMENTS OR ENGAGED IN FRAUDULENT CONDUCT; RELATING TO THIS INSURANCE.

The circuit court concluded that the above language precluded recovery on the entire claim where the insured intentionally misrepresents material facts or commits fraud in the proof of loss and granted Aetna's motion. The Tempelises appealed to the court of appeals raising the questions of whether the circuit court erred in failing to include reliance as an element of misrepresentation when instructing the jury and whether it was error to submit the issue of misrepresentation at all in light of the evidence produced at trial. The court of appeals asked for letter briefs addressing whether it should *sua*

*sponte* review the policy language relating to conceal-
ment or fraud and if so, whether the policy language
applied to fraud in a proof of loss as well as in an applica-
tion of insurance. The court of appeals concluded that,
although the Tempelises had not raised on appeal the
issue of the interpretation of the contract, the court
could undertake a *sua sponte* consideration of that issue.
It further concluded that the insurance policy was
ambiguous "in that it could be read by a reasonable
person to apply to statements made prior to the signing
of the policy, as in the application for insurance, or to
apply more expansively, including statements made later
in a proof of loss." *Tempelis v. Aetna Casualty & Surety
Co.,* 164 Wis. 2d 17, 29, 473 N.W.2d 549 (Ct. App. 1991)
(footnote omitted). We granted Aetna's petition for
review to address the following: (1) whether the court of
appeals *sua sponte* review was appropriate and if so; (2)
what is the appropriate construction of the insurance
policy.

The first issue we address is whether the court of
appeals exceeded its authority by reviewing the "con-
cealment or fraud" clause of the insurance contract. We
conclude that it did not.

The court of appeals concluded that its *sua sponte*
review was appropriate because:

> where the provisions of a contract are uncontested,
> the supreme court has ruled that it can undertake a
> *sua sponte* consideration of the legality of a contract
> when the illegality is apparent on the face of the
> contract and when the issue posed is of a serious
> nature. *Shea v. Grafe,* 88 Wis. 2d 538, 545–46, 274
> N.W.2d 670, 674 (1979). Because the provisions of
> the Aetna policy are uncontested, and because the
> doctrine allowing wholesale avoidance of a policy
> upon proof of any degree of material misrepresenta-

tion works a substantial hardship on insureds who
are not notified of the effects of such misrepresenta-
tion, we may consider this issue *sua sponte. Id.* at 28.

Aetna claims that the court of appeals' reliance on *Shea
v. Grafe,* 88 Wis. 2d 538, 274 N.W. 670, 674 (1979), as
support for its authority was misplaced. Specifically,
Aetna contends that under *Shea, sua sponte* review is
appropriate only where a contract is illegal on its face
and the issue posed is of a serious nature. *Shea,* 88 Wis.
2d at 545–46. Since the court of appeals concluded that
the contract was ambiguous, and there was no conten-
tion by the parties or by the court of appeals that the
Tempelises' insurance contract was illegal, Aetna rea-
sons that review by the court of appeals was inappropri-
ate. We disagree.

Regardless of the exact parameters of the holding in
*Shea,* a recent opinion of this court indicates that the
court of appeals' review in this case was appropriate. In
*Waushara County v. Graf,* 166 Wis. 2d 442, 461 N.W.2d
143 (1992), we indicated that the court of appeals has
the discretion to correct a circuit court's error of law,
regardless of whether either of the parties raised the
issue presented by the error. In discussing the appropri-
ateness of the court of appeals' review of an issue of law
not raised by the litigants, we stated that "[w]hile the
court of appeals had no obligation to look beyond the
issues presented by Basic Bible, it was within the court's
discretion to do so." *Id.* at 453.

There was no indication in *Waushara County* that
the issue reviewed was of a serious nature, nor did the
issue deal with the illegality of a contract. Our conclu-
sion that discretionary review was appropriate was with-
out qualification. Clearly, if discretionary review was
appropriate in *Waushara County,* it was similarly appro-

8

priate in this case where the court of appeals exercised its discretion and corrected what it viewed as a gross, unjust error of law made by the circuit court. Furthermore, the court of appeals gave both parties in this case an opportunity to address the issue of the appropriate construction of the policy terms. We conclude that the court of appeals did not exceed its authority by reviewing *sua sponte* the "concealment or fraud" clause of the contract.

We now turn to the issue of the appropriate construction of the insurance contract. We must address whether, under the terms of the insurance policy, the Tempelises' intentional misrepresentations and false statements concerning additional living expenses canceled coverage of their entire fire insurance claim. We begin with an overview of the rules governing the interpretation of insurance policies.

Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. *Caporali v. Washington Nat. Ins. Co.,* 102 Wis. 2d 669, 675, 307 N.W.2d 218 (1981) (quoting *Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975)). The general rule as to construction of contracts is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole. *Rosploch v. Alumatic Corp. of America,* 77 Wis. 2d 76, 81, 251 N.W.2d 838 (1977). We have also stated:

> The construction of an insurance contract is a question of law which we review *de novo.* Ambiguities in an insurance contract should be construed in favor of coverage. Exclusions are to be narrowly construed against the insurer, especially if they are uncertain as to effect.

9

*Cardinal v. Leader Nat. Ins. Co.,* 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992) (citations omitted).

" 'An ambiguity exists when the policy is reasonably susceptible to more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured.' " *Id.* at 383 (quoting *Schroeder v. Blue Cross & Blue Shield,* 153 Wis. 2d 165, 174, 450 N.W.2d 470 (Ct. App. 1989)). An ambiguity exists when words or phrases in an insurance contract are susceptible to more than one reasonable interpretation. *Just v. Land Reclamation Ltd.,* 155 Wis. 2d 737, 744, 456 N.W.2d 570 (1990) (citation omitted). If we determine that the contract is ambiguous, we must construe the ambiguity in favor of the insured. *Id.*

With these principles in mind we turn to the interpretation of the "concealment or fraud" clause at issue here which provides:

SECTION I and SECTION II—CONDITIONS

. . .

2. CONCEALMENT OR FRAUD. WE DO NOT PROVIDE COVERAGE FOR ANY INSURED WHO HAS:

a. INTENTIONALLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE;

b. MADE FALSE STATEMENTS OR ENGAGED IN FRAUDULENT CONDUCT; RELATING TO THIS INSURANCE.

The court of appeals concluded that the insurance contract was ambiguous because the "concealment or fraud" clause could be read by a reasonable person to apply only to statements made prior to the signing of the policy, or to apply more expansively and include state-

ments made in a proof of loss. It reasoned that since the policy language, "has made false statements," was phrased in the past tense it was reasonable for a person to interpret the contract as voiding coverage only for conduct that took place prior to the signing of the contract. In other words, the contract did not clearly reference behavior in the future, and thus was ambiguous as to whether it applied to statements made after the contract's inception. We disagree. We conclude that the contract is not ambiguous as to when a material misrepresentation must occur.

The subject policy does not limit the application of its "concealment and fraud" language to fraud occurring in the application of insurance. Rather, the contract clearly and unambiguously states "*any* material fact or circumstance." As one court noted in interpreting a similar "concealment and fraud" clause, the word "any" means any." *American Employers' Ins. Co. v. Taylor,* 476 So. 2d 281 (Fla. App. 1 Dist. 1985). *See also Longobardi v. Chubb Ins. Co. of New Jersey,* 121 N.J. 530 (1990). We conclude that the policy is unambiguous in this respect and can only be read to mean that any material misrepresentation, including a material misrepresentation in a proof of loss, renders the "concealment and fraud" clause operative.

Notwithstanding this conclusion, we nevertheless conclude that the policy language is ambiguous as to what extent a material misrepresentation voids coverage.

When read by a reasonable person in the position of the insured, we conclude the policy is reasonably susceptible to more than one construction. A reasonable insured could read the policy in at least one of two different ways: 1) as canceling coverage only for the subsection or element of the claim to which the material mis-

11

representation relates; or, 2) canceling coverage of the entire claim for any material misrepresentation. The policy language is therefore ambiguous.

The subject policy does not contain language to the effect that the "policy is void," or "the entire contract is void," or "the entire contract is cancelled," upon a material misrepresentation. Instead the policy states "SECTION I and SECTION II—CONDITIONS 2. CONCEALMENT OR FRAUD. WE DO NOT PROVIDE COVERAGE FOR ANY INSURED WHO HAS a. INTENTIONALLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE . . .." Under the sections of the policy marked Section I and II, Aetna has divided the policy into six coverage areas: (A) Dwelling; (B) Other Structures; (C) Personal Property; (D) Loss of Use; (E) Personal Liability (Bodily Injury and Property Damage); (F) Medical Payments To Others. Unquestionably, the language in question could be interpreted as cancelling the entire coverage when a material misrepresentation occurs. But, reading the contract as a whole, we conclude that an alternative and reasonable interpretation of these two sections is that a material misrepresentation that occurs after the inception of the contract cancels an insured's coverage only for the subsection to which the material misrepresentation relates, in this case section (D) Loss of Use. These provisions do not unequivocally and unambiguously put a reasonable insured on notice that a material misrepresentation voids coverage of his or her entire insurance claim. The phrase "misrepresented any material fact" can also indicate to a reasonable insured that his or her misrepresentation voids coverage for the element of the claim to which the misrepresentation relates, i.e., the element of the claim to which the mis-

12

representation is material, in this case additional living expenses.

Aetna points to decisions from other jurisdictions and argues that the policy unambiguously voids coverage of the entire insurance claim. We disagree with Aetna's interpretation of the subject insurance policy. Moreover, many of the policies at issue in the cases from other jurisdictions contain markedly different language than in this case. *See, e.g., Home Insurance Company v. Hardin,* Ky., 528 S.W.2d 723, 724 (1975) ("[t]his entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance . . .."); *American Employers' Ins. Co. v. Taylor,* 476 So. 2d 281, 282 (1985) (' "[t]his policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." ').

Because we have determined that the contract is ambiguous, we must construe the ambiguity in favor of the insured. We therefore hold that only the portion of the Tempelises' insurance claim to which the fraud relates, i.e., the claim for additional living expenses, is void and coverage is denied for that portion.

Not all jurisdictions have reached a contrary conclusion to the one reached by this court today. In discussing a similar "concealment and fraud" provision, the Supreme Court of South Carolina has held that a finding that a claim for the loss of the contents of a home was fraudulent does not preclude recovery for the loss of the dwelling and additional living expenses. The Carolina court did not base its holding on ambiguity in the insurance policy but rather simply refused to allow wholesale voidance of coverage stating, "the fraud only concerned the contents, and that recovery was properly voided.

13

However, recovery shall not be defeated on the dwelling and living expenses because the fraud did not affect these items." *Johnson v. South State Ins. Co.,* 288 S.C. 239, 242 (1986). As support for its holding the South Carolina Supreme Court relied on *Kerr v. State Farm Fire & Cas. Co.,* 552 F. Supp. 992 (D.S.C. 1982) *aff'd in part, rev'd in part on other grounds,* 731 F.2d 227 (4th Cir. 1984). In *Kerr,* the federal district court similarly held that:

> [a]n insurer may not rely on a provision excluding coverage absent a causal connection between the loss and the excluded or forbidden act.
>
> . . . The Kerrs' misrepresentations were entirely divorced from and bore no relation whatsoever to the loss of their residence. The Kerrs' right to recover under the policy for the loss of their real property vested at the time of the fire. Absent arson by the insured, the policy provided for a fixed amount to be paid in the event the real property was destroyed by fire. To be sure, had the Kerrs submitted no claim for personal property loss, they would be entitled to payment for the loss of realty. The submission of a false claim for personal property did not affect this vested right.
>
> Consequently, since there was no causal connection between the Kerrs' misrepresentations and the claim for loss of their real property, it is ordered that the Kerrs are entitled to recover . . . the fixed amount of the insurance on the dwelling house . . .. *Id.* at 995-96.

Although our decision is based on the fact that we conclude that the Tempelises' insurance policy is ambiguous, it is understandable why other courts have simply refused to allow a material misrepresentation that relates to one element of a claim, e.g., additional living expenses, to void coverage of the entire claim. Such an

interpretation of an insurance contract could produce extremely harsh results. For example, if an insured had a two million dollar insurance policy, and he or she submitted one fraudulent receipt for a $50 meal, the policy would void coverage of his or her entire insurance claim, including the two million dollar coverage of the home.

For the reasons set forth above we conclude that the portion of the Tempelises' insurance claim to which the fraud relates, i.e., the claim for additional living expenses, is void and coverage is denied. The remaining amounts of the insurance claim for the damage to the home and its contents as found by the jury are due the insured. Accordingly, we modify the judgment of the court of appeals and, as modified, affirm.

*By the Court.*—The decision of the court of appeals is modified and, as modified, affirmed.

STEINMETZ, J. *(dissenting).* I disagree with the majority's holding in this case. The appellants' misrepresentation clearly violated the express condition of their insurance contract, therefore, voiding coverage for all claims submitted for the fire. Hence, I dissent.

Other jurisdictions have held that fraud or misrepresentation as to any portion of property under an insurance policy voids the entire policy. *See, e.g.,* 44 Am. Jur. (2d) secs. 1371-76 (1982); 5A Appleman and Appleman, *Insurance Law and Practice,* sec. 3595 (1970); 45 C.J.S. *Insurance* sec. 1021 (1946). In fact, a New Jersey case, *Longobardi v. Chubb Ins. Co.,* 121 N.J. 530, 582 A.2d 1257 (1990), is similar to the present case both procedurally and factually. The issue articulated in *Longobardi* queried whether an insured's post-loss misrepresentation of personal property justified denial of coverage. *Id.* at 533. This is analogous to the issue facing this court.

15

The insurance policy in *Longobardi* contained a provision which read as follows: "*Concealment or Fraud:* We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." *Id.* at 534. A provision in the insurance policy in the present case resembles the aforementioned concealment or fraud section. It states: "We do not provide coverage for any insured who has: a. Intentionally concealed or misrepresented any material fact or circumstance; b. Made false statements or engaged in fraudulent conduct; relating to this insurance."

The jury in *Longobardi* found that the insured had made "a material false statement during the examination under oath conducted by defendant, or the written statement . . . in an effort to or for the purpose of hindering, deflecting or misleading defendant in the course of its investigative process." *Id.* at 536. The circuit court judge ultimately dismissed the case. Similarly, in the present case, the trial judge dismissed the claim against Aetna.

When the *Longobardi* case was appealed to the New Jersey Court of Appeals, the court concluded that the concealment or fraud clause was ambiguous and construed the ambiguity in favor of coverage. *See Longobardi v. Chubb Ins. Co. of New Jersey*, 234 N.J. Super 2, 560 A.2d 68 (1989). This finding was analogous to the decision made by the court of appeals in the present case. *See Tempelis v. Aetna Casualty & Surety Co.*, 164 Wis. 2d 17, 473 N.W.2d 549 (Ct. App. 1991). However, the New Jersey Supreme Court ultimately arrived at a different holding than our majority.

The New Jersey Supreme Court concluded that concealment or fraud clauses apply when an insured misrepresents facts to the insurance company that is investi-

gating a loss. *See Longobardi,* 121 N.J. at 538. The court reasoned that "[u]nder standard fire policies that expressly applied to misrepresentations 'whether before or after a loss,' courts from sister states have declared policies void when the insured made post-loss misrepresentations to the insurer." *Id.* at 538–39. *See also Sales v. State Farm Fire and Cas. Co.,* 849 F.2d 1383 (11th Cir. 1988); *American Employers' Ins. Co. v. Taylor,* 476 So. 2d 281 (Fla. Dist. Ct. App.), *cause dismissed without opinion sub nom. Taylor v. American Employers' Ins. Co.,* 485 So. 2d 426 (Fla. 1985); *State Farm Fire & Casualty Co. v. Jenkins,* 167 Ga. App. 4, 305 S.E.2d 801 (1983); *Dale v. Iowa Mut. Ins. Co.,* 40 N.C. App. 715, 254 S.E.2d 41 (1979). Writing on behalf of a unanimous court, Justice Pollock in *Longobardi,* 121 N.J. at 539, continued:

> When an insurer clearly warns in a 'concealment or fraud' clause that it does not provide coverage if the insured makes a material misrepresentation about any material fact or circumstance relating to the insurance, the warning should apply not only to the insured's misrepresentations made when applying for insurance, but also to those made when the insurer is investigating a loss. Such misrepresentations strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims. Thus, an insured's commitment not to misrepresent material facts extends beyond the inception of the policy to a post-loss investigation.

It was held that Longobardi's lies were sufficient for the Chubb Insurance Company to nullify the policy.

This court should have come to the same conclusion in the present case. Aetna's policy clearly warns in the concealment or fraud clause that it does not provide

17

coverage if the insured makes a material misrepresentation about any material fact or circumstance relating to the insurance.[1]

When the Tempelises submitted their loss claim following the fire that destroyed their home, they included a claim for additional living expenses and fabricated receipts showing meals and hotel expenses. More specifically, the plaintiffs submitted a sworn statement in proof of loss to Aetna. It included a document entitled "additional living expense" and over fifty receipts. Each of the receipts was dated between January 28 and March 25, 1989. The plaintiffs obtained blank receipts and menus from Lakeview Castle, a hotel/restaurant owned by Zoe Tempelis's sister. Fifty-one separate meal receipts were filled in showing specific menu items and drinks ordered; the receipts even reflected sales tax. The receipts were fabricated as the meals were never actually purchased. The receipts were also fraudulently prepared to reflect several weeks of living at the hotel when, in fact, plaintiffs were living with Sally Tempelis's parents. The lodging receipts even identified numbers from the check with which the phony hotel bills were purportedly paid.[2]

[1]The clause itself does not have legalistic phraseology and complex sentence structures. Rather, it is written so a reasonable person could understand it.

[2]I believe it noteworthy that the facts leading up to this case are fraught with questionable activity. First, in an attempt to lower the purchase price of their home, Mrs. Tempelis submitted a very low bid on the property under her "maiden" name. Shortly thereafter, Mr. Tempelis submitted another offer to purchase the home at a slightly higher price which was ultimately the purchase price of the home.

Second, Mr. Tempelis could not recollect how the amount of the insurance coverage was decided. He could not remember whether he asked his insurance agent to give him $100,000 coverage on the property or simply an amount over $75,000. The insur-

The jury unanimously concluded that the Tempelises intentionally misrepresented material facts and made false statements regarding their insurance. Because the jury found that the Tempelises made material misrepresentations concerning their insurance, this court should have followed *Longobardi* and other jurisdictions by voiding all coverage concerning the fire.

Moreover, well-settled principles of contract construction require that a contract be construed as a whole. *Laabs v. Chicago Title Ins. Co.*, 72 Wis. 2d 503, 510, 241 N.W.2d 434 (1976). The court of appeals interpreted the concealment or fraud language without regard to the caption above that provision. The heading makes it unmistakably clear that the conditions clause applies to both Section I and Section II. Such a construction of the policy gives the words their ordinary meaning and carries out the reasonable intention of the parties.

By not deciding that the proof of loss concealment provision voids coverage, this court is encouraging insureds to exaggerate losses, thereby burdening insurance companies with judicially mandated suspicion for every proof of loss statement submitted and ultimately increasing costs to all consumers. This court should have concluded that pursuant to this clear and unambiguous

---

ance agent testified that Mr. Tempelis had requested a policy for the amount of $100,000. The agent stated that Mr. Tempelis had told him that he was planning to make improvements to the home. Despite this claim, no major changes were made to the home from the time of the purchase to the time of the fire.

Plaintiffs were sophisticated regarding procedures to follow when submitting insurance claims. In fact, in the one year preceding the fire, plaintiffs submitted two insurance claims of theft losses. Plaintiffs also had previous experience submitting a fire claim, as a commercial building owned by them burned during 1984.

contract that fraud or misrepresentation as to any portion of claim under this insurance policy voided collection on all claims submitted for the fire. Because of the aforementioned reasons, I dissent.