Michelle ENNIS, Plaintiff-Respondent,†

v.

WESTERN NATIONAL MUTUAL INSURANCE COMPANY,
Defendant-Appellant,

WEA INSURANCE CORP. and William Ennis,
Defendants.

Court of Appeals

*No. 98–1095. Oral argument February 4, 1999.—Decided
March 23, 1999.*

(Also reported in 593 N.W.2d 890.)

†Petition to review denied.

824

826

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eric J. Magnuson* and *Gregory M. Weyandt* and oral argument by *Gregory M. Weyandt* of *Rider, Bennett, Egan & Arundel, LLP,* of Minneapolis, Minnesota.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charles B. Harris* and *Martha H. Heidt* and oral argument by *Charles B. Harris* of *Doar, Drill & Skow, S.C.* of Baldwin.

Before Cane, C.J., Myse, P.J., and Hoover, J.

HOOVER, J. Western National Mutual Insurance Company appeals a judgment declaring that it is obligated to pay $400,000 to Michelle Ennis under its automobile insurance policy's uninsured motorist provision. Western National issued the policy to Michelle's father, William Ennis. Western National contends the trial court erred by construing the policy to maximize the benefits payable. It argues that the trial court should have held that the policy afforded William liability coverage. We agree that the policy provides liability benefits to Michelle because the ambiguity must be construed in favor of coverage and, therefore,

she was not entitled to uninsured motorist benefits. We reverse the judgment and remand for further proceedings consistent with this opinion.

Michelle was injured in an automobile accident while riding as a passenger in William's Ford pickup truck. William was delivering the Pioneer Press paper to customers on his newspaper route at the time of the accident. Michelle was seriously injured when the pickup truck collided with a tree. No other vehicles were involved. At the time of the collision, Western National insured William's pickup. Michelle was a named insured. The policy afforded several different coverages, including liability and combined uninsured and underinsured motorist coverages. Each section contained its own definition of an "insured" as well as separate limits: the liability limit was $100,000, and the uninsured limit was $100,000. The policy insured four vehicles, thereby providing a maximum combined uninsured limit of $400,000.[1] The policy's liability portion contained a "carrying for a fee" exclusion that provided:

> A. We do not provide Liability Coverage for any person:
>
> . . . .
>
> 5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion (A.5.) does not apply to a share-the-expense car pool.

---

[1] This results from the uninsured motorist limits for each vehicle being "stacked." *See Welch v. State Farm Mut. Auto Ins. Co.*, 122 Wis. 2d 172, 178, 361 N.W.2d 680, 683 (1985). The accident occurred before the amendment of § 632.32, STATS., to authorize anti-stacking provisions in policies issued after October 1, 1995.

It is undisputed that if the "carry for a fee" exclusion applies, William's vehicle is uninsured and Michelle would be entitled to stack the uninsured motor vehicle benefits for a total recovery of $400,000. It is also undisputed that if the exclusion does not apply, William's vehicle was insured and Michelle would not be entitled to uninsured motor vehicle benefits.[2] Therefore our focus is on the meaning of this exclusion.

William had a newspaper route lease agreement with the Pioneer Press. Pursuant to that agreement, he received a list of home delivery subscribers and papers for delivery. He paid a wholesale price for the papers and charged five cents more than Pioneer's suggested urban retail rate. He assumed the risk of his subscribers not paying. The Pioneer Press also paid William a $275 per month route allowance. In addition to delivering the papers, William performed miscellaneous services in connection with his route, such as installing newspaper tubes for new customers. Some customers were solicited by, and paid, the Pioneer Press directly during promotions. For those customers, the Pioneer Press apparently sent a notification that delivery would continue beyond the initial order period unless the customer notified Pioneer. It also notified customers that "[c]osts will be slightly higher (30[cents]) for home delivery by motor route carriers." At least one third of his customers were subscribers who paid Pioneer directly.

Michelle filed this action seeking a declaration that she was entitled to $400,000 uninsured motorist benefits because the policy's liability coverage did not

[2] We do not address whether, in that case, Michelle might be entitled to underinsured motor vehicle benefits; that issue was not addressed by the trial court or by the parties in their briefing to this court.

apply as a result of the "carrying for a fee" exclusion. Michelle filed a motion for summary judgment requesting broad interpretation of the exclusion or a determination that it was ambiguous. Western National argued for a narrow construction. The trial court decided in Michelle's favor, concluding that, as a whole, the policy was ambiguous and accordingly should be construed in favor of the person standing to gain the maximum benefits. It concluded that the Ford pickup was an uninsured motor vehicle at the time of the accident and that the policy provided $400,000 uninsured motorist coverage to Michelle.

On appeal, we address whether the "carry for a fee" exclusion is ambiguous and, if so, what is the effect of the ambiguity. Michelle contends the exclusion unambiguously denies liability coverage to William, but that even if it is ambiguous, it is to be construed against the insurer by maximizing benefits payable *under the policy as a whole.* Western National concedes the exclusion is ambiguous, but claims it is to be construed against the insurer by *affording liability coverage to William.*

■■■■

We review summary judgment rulings independently, *Burkes v. Klauser,* 185 Wis. 2d 308, 327, 517 N.W.2d 503, 511 (1994), using the same methodology as the circuit court. *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 477 (1980). A motion for summary judgment must be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS. We interpret an insurance policy's terms under a de novo standard, without deference to the decision of the circuit court. *Kaun v. Industrial Fire*

*& Cas. Ins. Co.*, 148 Wis. 2d 662, 667, 436 N.W.2d 321, 323 (1989).

The parties' briefs devote considerable attention to whether the exclusion is ambiguous. Western National argues that the exclusion is simply the old public or livery conveyance exclusion in new clothes, and not only must there be a fee specific to the delivery, the delivery service must be held out to the public at large. Western National reasons that because William did not provide a for-a-fee public delivery service, the exclusion does not apply, and William has liability coverage rendering the policy's uninsured motorist provision inapplicable. During oral arguments, however, Western National conceded that the carry for a fee exclusion *is* ambiguous. We agree, although without benefit of a published Wisconsin case addressing the issue.[3] The parties have exhaustively briefed the issue, and because it may rise again we take this opportunity to resolve the question.

Our consideration whether the exclusion is ambiguous begins with the well-established rule that words or phrases in an insurance policy are ambiguous if, when read in context, they are susceptible to more than one reasonable interpretation. *Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 10, 485 N.W.2d 217, 220 (1992). Our focus is on whether the exclusion is susceptible to more than one reasonable interpretation when read in context. *Id.* In this regard, we consider the meaning to assign to the word "fee." In construing an

---

[3] The exclusion's ambiguity has, however, been litigated elsewhere with sufficient frequency to warrant an A.L.R. article. *See* Randy J. Sutton, Annotation, *What constitutes use of Automobile "To Carry Persons or Property For Fee" within exclusion of Automobile Insurance Policy*, 57 A.L.R.5th 591 (1998).

insurance policy, we may look to dictionary definitions for the common meaning and usage of words. *See Weimer v. Country Mut. Ins. Co.*, 211 Wis. 2d 848, 867, 565 N.W.2d 595, 603 (Ct. App. 1997). WEBSTER'S THIRD NEW INT'L DICTIONARY 833 (1993) defines "fee" as a fixed charge for various services. BLACK'S LAW DICTIONARY 553 (5th ed. 1979) construes "fee" as a charge for a particular act or service, or reward, compensation or wage given to a person for performance of services or something done or to be done. Using these definitions, the exclusion is not susceptible to a reading that restricts its application to instances when the vehicle is held out for general public use. It could be intended to only apply to either *any* use of a vehicle to transport property when there is *any* payment to the insured, including wages, or only when there is a payment specifically for the particular act of transporting property. Either interpretation is reasonable; therefore, the exclusion is ambiguous. *Tempelis*, 169 Wis. 2d at 10, 485 N.W.2d at 220.

Michelle contends that it does not matter whether the exclusion is ambiguous because under any interpretation it still applies. We disagree. If the exclusion applies only to a fee specifically charged for the particular act of transporting property, then the exclusion does not apply, and William would have liability coverage.[4] His arrangement with the Pioneer Press contained an element of business risk; if the subscribers on his route did not pay him for the paper, he absorbed the loss. He also had duties other than delivering papers. Thus, this case presents something other than the conventional delivery-for-a-fee situation.

---

[4] Michelle does not contend that the five-cent differential is a delivery fee.

While it is well settled that appellate courts resolve ambiguities in insurance policies against the insurer and in favor of the insured,[5] this maxim does not resolve this matter. We must decide whether to construe the ambiguity to maximize benefits payable under the policy as a whole *or* to afford coverage under the liability portion of the policy. Western National suggests we construe the ambiguity in favor of coverage. It argues that we should hold that the exclusion does not apply and that Michelle recovers under the policy's liability, and not the uninsured motorist coverage. Michelle contends that we should construe the ambiguity to maximize benefits payable, meaning the exclusion applies so that she can recover $400,000 under the uninsured motorist coverage.

Wisconsin courts have expressed the "resolving ambiguities" rule in a number of different ways. Some have said that ambiguities in coverage are to be broadly construed, while ambiguities in exclusions are to be narrowly construed. *See Kaun*, 148 Wis. 2d at 668, 436 N.W.2d 324. Other cases hold that ambiguous language will be construed in favor of coverage. *See Frank v. Wisconsin Mut. Ins. Co.*, 198 Wis. 2d 689, 694, 543 N.W.2d 535, 536 (Ct. App. 1995). Still others have stated more generally that ambiguities are construed against the drafter and in favor of the insured. *See Northland Bottling Co. v. Farmers Mut. Auto. Ins. Co.*, 3 Wis. 2d 326, 329, 88 N.W.2d 363, 365 (1958).

All of these rules are rooted in the doctrine of *contra proferentem* ("against the offeror"). *See* 2 COUCH ON INSURANCE 3D § 22:14, at 22–31 (1997). The principle underlying the doctrine is straightforward. Since the

---

[5] *Auto-Owners Ins. Co. v. Rasmus*, 222 Wis. 2d 342, 349, 588 N.W.2d 49, 52 (Ct. App. 1998).

insurer drafts the policy, it has the opportunity to employ expressive exactitude to avoid a misunderstanding of the policy's terms. *See Donaldson v. Urban Land Interests*, 211 Wis. 2d 224, 230, 564 N.W.2d 728, 731 (1997). Because the insurer is the party best situated to eliminate ambiguity in the policy, the policy's terms should be interpreted as they would be understood from the perspective of a reasonable person in the position of the insured. *See General Cas. Co. v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718, 722 (1997). Our supreme court has also said that the rule that the policy is construed most strongly against the insurer applies only to the contract language and not to the case's facts. *Bauman v. Midland Union Ins. Co.*, 261 Wis. 449, 452, 53 N.W.2d 529, 530 (1952).

Combining these rules, we conclude that when an ambiguous exclusion in a policy relates directly to liability coverage, it is resolved in favor of liability coverage and not to maximize benefits payable under some other coverage afforded by the policy. The policyholder is the "reasonable insured" from whose perspective we interpret the policy. The policyholder purchases liability coverage on an auto policy for protection from liability associated with use of the vehicle and would read ambiguities in that coverage to afford greater liability coverage, not less.

We are not to construe the language against Western National based on this case's facts, but upon the policy language. *See id.* Michelle wants us to construe the ambiguity against the insurer based only upon the facts of her claim. She asks us to construe the liability portion of the policy in such a way that her uninsured

motorist benefits are maximized.[6] To do so could result in an absurdity; for claims arising from the same occurrence, William is both insured and uninsured, depending upon the claimant. We refuse to interpret the policy in a manner leading to an absurd result. *See Kopp v. Home Mut. Ins. Co.*, 6 Wis. 2d 53, 57, 94 N.W.2d 224, 226 (1959).

For example, were we to accept Michelle's argument, the exclusion applies in connection with her claim, rendering William uninsured and entitling her to $400,000 of uninsured motorists coverage. On the other hand, viewing the policy from William's perspective, in connection with the Pioneer Press' cross-claim, the ambiguous exclusion does not apply. Since Western National can look only at the facts of William's claim, it would have to pay $100,000 on its liability coverage. The result would be that Western National pays a total of $500,000. We "will not, under the guise of strict construction . . . rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Bankert v. Threshermen's Mut. Ins. Co.*, 105 Wis. 2d 438, 444–45, 313 N.W.2d 854, 857 (Ct. App. 1981). Insurance policies are to be given a reasonable construction, not one that leads to an absurd result. *See Kopp*, 6 Wis. 2d at 57, 94 N.W.2d at 226.

---

[6] Michelle argues that this case presents a unique circumstance akin to a trustee owing a fiduciary obligation to two beneficiaries, in which the trust stands to gain significantly by favoring one over the other. We are not persuaded that it is a sound analogy to incorporate trust law concepts into what heretofore has been essentially controlled by contract law or that we would not be forging a new and conceptually distinct species of bad faith.

In summary, when a provision in an insurance policy that purports to exclude liability coverage is ambiguous, we construe the policy in favor of such coverage, that is, in favor of the policyholder who sought to purchase liability coverage. In this case, we construe the policy to provide William with liability coverage. Because William is thus insured, Michelle cannot rely upon the policy's uninsured motorists provisions for recovery. Accordingly, we reverse the judgment and remand to the trial court with directions to proceed in a manner consistent with this decision.

*By the Court.*—Judgment reversed and cause remanded with directions.