Joshua D. Hansen,
Plaintiff,

Richardson Industries, Inc.,
Involuntary-Plaintiff,

v.

Carl H. Degnitz and Degnitz Bus Service, Inc.,
Defendants-Third-Party Plaintiffs-Appellants-
Cross-Respondents,†

Auto-Owners Insurance Company,
Defendant-Appellant-Cross-Respondent,†

Ryan D. Toellner and State Farm Mutual
Automotive Insurance Company, Defendants,

Wausau Underwriter's Insurance Company and
Employers Insurance of Wausau, Third-Party
Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 2004AP116. Oral argument April 6, 2005.
—Decided April 27, 2005.*

2005 WI App 90

(Also reported in 701 N.W.2d 77.)

† Petition to review denied 7-28-05.

On behalf of the defendants-third-party plaintiffs-appellants-cross-respondents Carl H. Degnitz and Degnitz Bus Service, Inc., and defendant-appellant-cross-respondent Auto-Owners Insurance Company, there were briefs and oral argument by *Jeremy T. Gill* of *Nash, Spindler, Grimstad & McCracken LLP* of Manitowoc.

On behalf of the third-party defendants-respondents-cross-appellants Wausau Underwriter's Insurance Company and Employers Insurance of Wausau, the cause was submitted on the briefs of *Thomas R. Schrimpf* and *David J. Hanus* of *Hinshaw & Culbertson LLP* of Milwaukee. There was oral argument by *Thomas R. Schrimpf.*

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J.   On December 14, 1999, a school

bus carrying the Random Lake basketball team was involved in an automobile accident. A student athlete, Joshua D. Hansen, was among the injured. The dispute in this case is between the insurance carrier for the bus company and the insurance carrier for the school district. By the time Hansen sued, the bus company's insurer had exhausted its primary liability policy in a settlement with another plaintiff involved in the accident. But the bus company's insurer had also issued an umbrella policy with a provision stating that, in the event exhaustion occurs, the umbrella policy replaces the exhausted primary policy. This provision is known in the insurance industry as a "drop down" provision, and the trial court held that the "drop down" made the bus company's umbrella policy, not the school district's business auto policy, the "next layer of liability." We agree and affirm.

¶ 2. On the day of the accident, Carl H. Degnitz, within the scope of his employment, operated a school bus hired to transport the Random Lake High School boys basketball team. The accident occurred in Sheboygan county at the intersection of County Trunks A and M and involved two other vehicles. As a result of this accident, both Sharon K. Wagner and Hansen, one of the passengers on the school bus, sustained injuries.

¶ 3. The Wagner family sued first, naming Degnitz and the bus company, Degnitz Bus Service, Inc. (collectively Degnitz) as well as Degnitz's insurance carrier, Auto-Owners Insurance Company, among the defendants. On February 13, 2002, Auto-Owners agreed to settle the Wagners' case for $2.9 million.[1] This

---

[1] Various parts of the record refer to a $2.92 million or $3 million settlement agreement. We will use the $2.9 million figure, the amount stated in the record copies of the settlement.

settlement exhausted the $1 million maximum liability limit in Auto-Owners' auto policy. It also used up all but $100,000 of Auto-Owners' $2 million umbrella policy coverage.

¶ 4.   Ten months after Auto-Owners settled with the Wagners, Hansen filed his complaint. He too named Degnitz and Auto-Owners among the defendants. Degnitz filed a third-party complaint against Wausau Underwriter's Insurance Company and Employers Insurance of Wausau (collectively Wausau)—with whom Random Lake School District held a business auto policy covering liability in amounts up to $3 million and a $13 million umbrella policy—on April 16, 2003.

¶ 5.   Auto-Owners and Wausau filed cross-motions for declaratory relief. Auto-Owners moved the court to declare Auto-Owners' umbrella policy excess over Wausau's policies, arguing the Wausau business auto policy provided the primary coverage for any losses attributable to Degnitz. Wausau's cross-motion sought an order that its policies precluded coverage for Degnitz or, in the alternative, that Wausau provided only insurance excess over the umbrella policy limits.

¶ 6.   The circuit court heard oral arguments on this issue on September 22, 2003, and rendered its oral decision on September 26. The court determined that although Wausau's policies did provide coverage for Degnitz, they were excess over the limits of Auto-Owners' umbrella policy. It concluded that the umbrella policy "drops down to provide primary coverage" because of a provision in Auto-Owners' policy stating that the umbrella policy replaced the primary policy in the event of exhaustion of the primary policy. The court signed its order on October 14. Both parties appeal.

¶ 7.   We first address the issue of which insurance carrier bears primary responsibility for Degnitz's liability.[2] To resolve this issue, we must interpret the terms of each policy. This task presents a question of law for our de novo review. *Lechner v. Scharrer,* 145 Wis. 2d 667, 672, 429 N.W.2d 491 (Ct. App. 1988). When we construe an insurance contract, we aim to give the terms a reasonable construction consistent with the understanding of a reasonable person in the insured's position. *See Ermenc v. American Family Mut. Ins. Co.,* 221 Wis. 2d 478, 484, 585 N.W.2d 679 (Ct. App. 1998); *Johnson Controls, Inc. v. Employers Ins. of Wausau,* 2003 WI 108, ¶ 30, 264 Wis. 2d 60, 665 N.W.2d 257, *cert. denied,* 541 U.S. 1027 (2004).

¶ 8.   Where the language of the policy is clear and unambiguous, we go no further than its plain meaning. *Danbeck v. American Family Mut. Ins. Co.,* 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. An ambiguity exists, however, when reading the language in context renders the policy susceptible to more than one reasonable interpretation. *Ennis v. Western Nat'l Mut. Ins. Co.,* 225 Wis. 2d 824, 831, 593 N.W.2d 890 (Ct. App. 1999). It is well settled that the courts generally resolve such ambiguities in favor of the insured. *Id.* at 833.

---

[2] We asked the parties to address whether the proceedings in the Wagner action—in which the circuit court entered an interlocutory order stating that Wausau's policy provided Degnitz excess coverage over the limits of Auto-Owners' umbrella policy—operated to estop either party from arguing the position it asserts here. Having considered the parties' supplemental briefs and oral argument, we conclude that no estoppel problem arises.

¶ 9. Auto-Owners' umbrella policy contains the following term in its "LIMITS OF LIABILITY" section:

> In the event of reduction or exhaustion of the aggregate limits of liability in the **scheduled underlying insurance** by reason of losses paid, this policy shall, subject to this limits of liability provision, and to the terms and conditions of this policy:
>
> . . . .
>
> b. in the event of exhaustion, apply in place of **scheduled underlying insurance**.

The policy defines "scheduled underlying insurance" to mean "the insurance policies listed in the Schedule of Underlying Insurance including any renewal, extended reporting period, or replacement of such contracts which are not more restrictive." The "SCHEDULE OF UNDERLYING INSURANCE" lists Auto-Owners $1 million auto insurance policy.

¶ 10. Reading these three items together, the exhaustion clause states that, "in the event of exhaustion," the umbrella policy applies "in place of" the auto policy, "subject to [the] limits of liability provision, and to the terms and conditions of [the umbrella policy]." "In place of" has essentially the same meaning as "replace." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 992 (10th ed. 1997) (definition of "replace"). Thus, the policy provides that the umbrella policy will replace scheduled underlying insurance when the latter maxes out.

¶ 11. We do not see how an umbrella policy can purport to "replace" primary coverage without affording primary coverage and losing its character as an umbrella policy. Yet, that is exactly what other terms in the policy—to which the "LIMITS OF LIABILITY" section

461

purports to make the exhaustion clause subject—appear to contemplate. The "CONDITIONS" section of the policy includes an "other insurance" condition. This section reads: "The insurance afforded under this policy shall apply as excess insurance over other collectible insurance (other than insurance applying as excess to **our** limit of liability) available to the **insured** and covering **ultimate net loss** covered by this insurance." Obviously, this condition was designed to make clear that the umbrella policy was in fact meant to be an umbrella policy. However, the intent of the exhaustion clause is to turn the policy into a primary policy when the primary policy is exhausted. We simply cannot give simultaneous effect to both provisions. Because we must resolve this ambiguity in favor of coverage, we hold the policy to say that when exhaustion of the auto policy occurs, the excess clause no longer applies and the umbrella policy morphs into a primary policy.

¶ 12. Auto-Owners complains that interpreting the exhaustion clause as a "drop down" provision ignores other language in the "LIMITS OF LIABILITY" section that states Auto-Owners will only be liable for the ultimate net loss in excess of "the applicable limits of **scheduled underlying insurance** *plus* the limits of any **unscheduled underlying insurance**." (Emphasis added.) The policy defines the latter term to include policies available to the insured "whether primary, excess, excess contingent, or otherwise" that are not listed in the "SCHEDULE OF UNDERLYING INSURANCE." Auto-Owners maintains that because Wausau was unscheduled underlying insurance within this definition, this limitation on liability requires exhaustion of both the auto policy *and* Wausau's policy before the umbrella policy provides coverage.

462

¶ 13. We disagree because we find this provision problematic for the same reason we concluded we could not enforce the "other insurance" provision. We do not understand how the umbrella policy can replace the exhausted auto policy and simultaneously apply in excess of any other policy that is not an umbrella policy. Wausau suggests that the provision merely means that in general, when *both* scheduled and unscheduled insurance policies are available to the insured, it must exhaust both first. It points out that here, by contrast, we do not have scheduled *and* unscheduled underlying insurance, because the auto policy, the scheduled underlying insurance, has been maxed out. We deem this interpretation reasonable and the only way to give effect to both provisions.

¶ 14. We acknowledge Auto-Owners' reliance on our holdings in *Oelhafen v. Tower Ins. Co.*, 171 Wis. 2d 532, 492 N.W.2d 321 (Ct. App. 1992), and *Treder v. LST, Ltd. Partnership,* 2004 WI App 75, 271 Wis. 2d 771, 679 N.W.2d 555, *review denied,* 2004 WI 114, 273 Wis. 2d 656, 684 N.W.2d 137 (No. 2003AP0848), but find them distinguishable. Auto-Owners cites these cases for the proposition that umbrella policies are categorically different from policies like Wausau's, which essentially afford primary coverage but happen to have clauses that provide for excess coverage in certain situations. Based on these cases, Auto-Owners argues that umbrella policy coverage is always excess to that of other types of policies; it is an insured's last line of defense. We disagree with neither the holding nor the reasoning in those cases, but neither applies where the policy in question no longer has the character of an umbrella policy. As we stated above, the exhaustion clause makes

clear that when scheduled insurance maxes out, the umbrella policy turns into a primary policy.

¶ 15. Auto-Owners acknowledges that Wausau's policy contains an excess clause. It reads: "For any 'auto' within a covered hazard you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." As we stated above, we can no longer give effect to the excess clause in Auto-Owners' coverage because of the exhaustion clause. Thus, the umbrella policy is a primary policy that does not provide for excess liability. Accordingly, Wausau's excess clause means Wausau need not pay until Auto-Owners exhausts the remaining $100,000 in the umbrella policy.[3]

¶ 16. We hold that the exhaustion clause is irreconcilable with the notion that Auto-Owners' umbrella policy maintained the character of an umbrella policy after Auto-Owners settled with the Wagners and exhausted its underlying auto policy. The exhaustion clause therefore operated as a "drop down" provision. Because Wausau's policy provides coverage for non-owned autos within a covered hazard only in excess of other coverage, Auto-Owners must pay before Wausau becomes liable. We affirm.

*By the Court.*—Order affirmed.

■■■■■■■

[3] Wausau cross-appealed the circuit court's determination that the omnibus statute, Wis. Stat. § 632.32, applied, such that its excess policies covered Degnitz. However, it also stated at oral argument that if we decided the priority of coverage issue in its favor, the issue would be moot. Therefore, we do not reach the cross-appeal.